UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SONDA SHAFER, *et al.*,

    Plaintiffs,

vs.

DAVID REESE, *et al*.,

    Defendants.

Case No. 3:16-cv-71

District Judge Thomas M. Rose
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 21) BE DENIED WITH REGARD TO *PRO SE* PLAINTIFF'S SECTION 1983 CLAIMS ALLEGING FOURTH AMENDMENT VIOLATIONS; AND (2) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED WITH REGARD TO *PRO SE* PLAINTIFFS' REMAINING CLAIMS ALLEGING THE ALTERATION OF EVIDENCE, CIVIL CONSPIRACY, AND MUNICIPAL LIABILITY**

---

This is a 42 U.S.C. § 1983 civil rights action brought by *pro se* Plaintiffs Steven Inskeep and Sonda Shafer against the City of Urbana, Ohio as well as Defendants David Reese, Michael Cooper, and Jason Kizer, all of whom were employed by the Urbana Police Department ("UPD") at the time at issue in this case. This action concerns, *inter alia*, Defendants' allegedly warrantless entry into an apartment where both Plaintiffs resided on March 3, 2015.

Now before the Court is Defendants' motion for summary judgment. Doc. 21. Inskeep filed a memorandum in opposition. Doc. 27. Shafer did not file a memorandum in opposition and the time for doing so has expired. The Court previously ordered Shafer to show cause why her claims should not be dismissed as a result of her failure to respond to Defendants' motion. Doc. 30 at PageID 233. Shafer filed a response to the Court's Show Cause

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Order, but did not directly address any of the arguments raised by Defendants. Doc. 35 at PageID 262-63. In the interest of justice, and in light of her *pro se* status, the undersigned assumes that Shafer joins in the arguments advanced by Inskeep. Following the filing of the memorandum in opposition, Defendants filed a reply. Doc. 34. The Court has carefully considered all of the foregoing, including all Rule 56 evidence properly submitted in support of each party's position, and Defendants' motion is now ripe for decision.

**I.**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id*. (citation omitted). Failure

"to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Buarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

## II.

In support of their arguments on summary judgment, Defendants submit the affidavits of UPD Officer Jade Michael Cooper (doc. 21-1) and UPD Sergeants Jason Kizer[2] (doc. 21-2), David Reese (doc. 21-3), and Edward Burkhammer[3] (doc. 21-4). Defendants also rely on Inskeep's responses to requests for admission. Doc. 21-5. *Pro se* Plaintiffs, on the other hand, rely on their sworn affidavits in opposing Defendants' motion. Docs. 27-1, 27-2, 27-3, 27-4. The Court has carefully considered all of the foregoing Rule 56 evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Unless otherwise stated herein, the following are the undisputed facts of the case.

At approximately 12:30 a.m. on Tuesday, March 31, 2015, Urbana resident Daniel Bailey ("Bailey"), who lives at 314 Miami Street, Apartment 4, Urbana, Ohio 43078 (the "Apartment Building") called the UPD dispatch center. Doc. 21-1 at PageID 132. During this call, Bailey

---

[2] Kizer was promoted to the rank of sergeant in February 2017. *See* doc. 21-2 at PageID 149.
[3] Burkhammer was a sergeant with the Urbana Police Department at the time of the events at issue here. *See* doc. 21-4 at PageID 179. Burkhammer retired from the Urbana Police Department in 2016 and currently works for the Ohio Department of Public Safety. *Id*.

3

reported suspected illegal drug activity taking place at the Apartment Building. *Id*. Specifically, Bailey stated that he discovered a marijuana grow operation in the Apartment Building's basement storage space, which was shared by the Apartment Building's residents. *Id*. As a result of Bailey's call, Officer Cooper was dispatched to the Apartment Building. *Id*.

When Cooper arrived at the Apartment Building, Bailey showed him a plant that he removed from the grow operation. *Id*. Based on his visual inspection, Cooper believed the plant was marijuana. *Id*. at PageID 132-33. Bailey also reported having had issues with another resident of the Apartment Building -- namely Inskeep -- over Inskeep's daily marijuana use. *Id*. at PageID 133. Further, Bailey advised Cooper that Inskeep previously told him about a larger-scale grow operation "on a one or two acre farm off of State Route 36." *Id*.

While Cooper was speaking with Bailey, Officer Kizer was dispatched to and arrived at the Apartment Building. *See* doc. 21-2 at PageID 142. After Kizer arrived, Sergeant Reese was also called to assist. *Id*. at PageID 149-50; doc. 21-1 at PageID 133. When Reese arrived at the Apartment Building, he agreed that the plant Bailey removed from the basement appeared to be marijuana. Doc. 21-3 at PageID 152-53. Bailey then consented to a search of the Apartment Building's basement storage space by signing a Consent to Search form. Doc. 21-1 at PageID 133. After signing that form, Bailey took Cooper and Reese to the basement and showed them the grow operation that he had discovered. Doc. 21-1 at PageID 133; *see also* doc. 21-3 at PageID 153. At that time, Reese and Cooper agreed that the plants in the Apartment Building's basement appeared to be marijuana. Doc. 21-1 at PageID 133; *see also* doc. 21-3 at PageID 153.

After observing the grow operation in the basement, Reese and Cooper proceeded to Inskeep's apartment to speak with him. Doc. 21-1 at PageID 133-34; doc. 21-3 at PageID 153. At that time -- based on the marijuana plants located in the Apartment Building's basement, the information provided by Bailey about Inskeep's daily marijuana use, the large-scale grow

4

operation Inskeep previously described to Bailey, and Inskeep's known criminal background involving drugs (including the cultivation of marijuana) -- Reese and Cooper concluded that Inskeep was responsible for the marijuana grow operation in the Apartment Building's basement. Doc. 21-1 at PageID 134; doc. 21-3 at PageID 153.

When Reese and Cooper arrived at the apartment Inkeep shared with Shafer, they knocked on the door and announced themselves.[4] Doc. 21-1 at PageID 134; doc. 21-3 at PageID 153. Inskeep answered the door and denied any knowledge of the marijuana grow operation in the basement. Doc. 21-1 at PageID 134; doc. 21-3 at PageID 153. Reese and Cooper testify, via affidavits submitted to the Court, that they could smell the odor of marijuana in the apartment.[5] Doc. 21-1 at PageID 134; doc. 21-3 at PageID 154. Inskeep declined to give consent to a search of the apartment, at which time Reese and Cooper instructed Plaintiffs, who were then still in the apartment, to get dressed because a search warrant was going to be obtained. Doc. 21-1 at PageID 134; doc. 21-3 at PageID 154. Defendants contend that, at that point, Inskeep told Reese and Cooper that they could enter the apartment. Doc. 21-1 at PageID 134; doc. 21-3 at PageID 154. Plaintiffs both testify, however, that no consent was ever given to Defendants to either enter or search the apartment. Doc. 27-1 at PageID 218; doc. 27-2 at PageID 219.

Nevertheless, Reese and Cooper then entered the apartment. Doc. 21-1 at PageID 134. While Reese and Cooper were in the apartment, Shafer complied with the instruction to get dressed, but Inskeep did not. *Id.* Because Inskeep refused to cooperate with the commands he was given, he was detained pending the completion of the investigation into the possession of marijuana and illegal manufacture of drugs. *Id.* Inskeep was handcuffed, a jacket was placed

---

[4] Shafer testifies that Kizer, Reese, and Cooper "came to [the] door, banging, yelling loudly, and demanding consent to search." *See* doc. 4 at PageID 26 (Case No. 3:16-cv-00071).

[5] As noted *infra*, there is no mention of smelling marijuana in the affidavit in support of a warrant to search the Apartment (doc. 21-1 at PageID 140; doc. 21-3 at PageID 161) or in the narrative supplement appended to the Ohio Uniform Incident Report (doc. 21-1 at PageID 146

around him, and he was escorted to Officer Kizer's patrol car by Sergeant Reese. *Id*. Reese then transported Inskeep to the UPD and Mirandized him. Doc. 21-3 at PageID 154. During this same time period, Shafer was escorted out of the apartment and into the Apartment Building's shared hallway by Kizer, who Mirandized her. Doc. 21-2 at PageID 150. Thereafter, Shafer was taken to the UPD and detained pending completion of an investigation. Doc. 21 at PageID 106.

After Plaintiffs were detained, and while at the UPD, Reese prepared a search warrant and supporting affidavit for Cooper to sign. Doc. 21-3 at PageID 155. Notably, the affidavit ultimately signed by Cooper makes no mention of smelling marijuana while approaching the apartment, while requesting consent to search and or enter, or at the time Plaintiffs were being detained incident to seeking a search warrant. *See* doc. 21-1 at PageID 140; doc. 21-3 at PageID 161. While Reese was preparing these documents, Cooper remained at the Apartment Building in order to protect the scene and ensure that no physical evidence would be altered or destroyed prior to a search warrant being obtained. Doc. 21-1 at PageID 135. At 5:04 a.m., Judge Lori L. Reisinger ("Judge Reisinger") of the Champaign County Family Court, signed a search warrant authorizing a search of the apartment. *Id*. At 5:27 a.m., Reese, Cooper, and Kizer executed the search warrant. *Id*. at PageID 136.

At approximately 1:45 p.m., Reese spoke again with Shafer while at the UPD. Doc. 21-3 at PageID 156. At approximately 2:00 p.m., Sergeant Burkhammer and Cooper spoke with Inskeep at the UPD. Doc. 21-4 at PageID 181. Burkhammer recorded the conversation and spoke with Inskeep about his activities at the Highway 36 Property. *Id*.

On June 4, 2015, Inskeep was indicted by a grand jury in Champaign County, Ohio on two counts of possession of marijuana in violation of Ohio Rev. Code § 2925.11, and two counts of illegal cultivation of marijuana in violation of Ohio Rev. Code § 2925.04. *See State of Ohio v. Inskeep*, No. 2015 CR 00092 (Champaign C.P. June 4, 2015); *see also* doc. 21-5 at PageID 190.

On December 28, 2015, in exchange for the dismissal of one count of marijuana possession and one count of illegal cultivation of marijuana, Inskeep plead guilty to one count of possession of marijuana and one count of illegal cultivation of marijuana. Doc. 21-5 at PageID 192. The parties present no evidence regarding any charges against Shafer.

## III.

In their two § 1983 lawsuits consolidated here, *pro se* Plaintiffs allege that: (A) Reese, Cooper, and Kizer unlawfully entered into their residence in violation of the Fourth Amendment; (B) Reese, Cooper, and Kizer unlawfully detained them in violation of the Fourth Amendment; (C) the City of Urbana is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) for the improper training of its officers and for permitting a pattern and practice of constitutional violations; (D) Defendants conspired to violate their constitutional rights in violation of 42 U.S.C. § 1985(3); and (E) Defendant Burkhammer unconstitutionally altered audio evidence in violation of Inskeep's due process rights.[6] The Court liberally construes *pro se* Plaintiffs' claims in their favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (stating that "[a] document filed *pro se* is 'to be liberally construed'"). Defendants move for summary judgment on all claims. *See* doc. 21.

### A.  Fourth Amendment

The Court first addresses the initial warrantless entry into Plaintiffs' home, as well as Plaintiffs' alleged seizure during that warrantless entry. Defendants argue that they are entitled to qualified immunity on these Fourth Amendment claims. *See* doc. 21 at PageID 126-29.

---

[6] To the extent Inskeep now asserts claims challenging the search warrant, the undersigned notes that such claims were not alleged in his complaint and, therefore, are not part of this case. "A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp.2005)).

7

"Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Simply put, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). State actors in their individual capacity are entitled to qualified immunity unless "the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini*, 609 F.3d at 863; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Plaintiffs challenge the constitutionality of Defendants' warrantless entry in their apartment, and their warrantless seizure therein, under the Fourth Amendment, which is made applicable to the States by virtue of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 669 (1961); *Terry v. Ohio*, 392 U.S. 1, 8 (1968). The Fourth Amendment states that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV; *see also Florida v. Jardines*, 569 U.S. 1, 5 (2013). "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York*, 445 U.S. 573, 585-86 (1980); *see also Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003); *Johnson v. City of Memphis*, 617 F.3d 864, 867 (6th Cir. 2010).

"The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985). The "reasonableness requirement generally requires that police obtain a warrant based upon a judicial determination of probable cause prior to entering a home." *Thacker*, 328 F.3d at

252. In fact, "[w]arrantless entries into the home are 'presumptively unreasonable.'" *Johnson*, 617 F.3d at 868 (citing *Payton*, 445 U.S. at 586).

1.  **Apartment Entry**

The undersigned first addresses the allegedly unconstitutional entry into the apartment by Defendants Reese, Cooper and Kizer. In this case, officers knocked on Plaintiffs' door and, after asking a few questions, requested that Inskeep consent to the search of the apartment. Doc. 27-2 at PageID 219. The undersigned finds no Fourth Amendment violation resulting from the officers' knocking on Plaintiffs' door to seek consent to search. *See Kentucky v. King*, 563 U.S. 452, 463, 469 (2011) (noting that "officers may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs" because "[w]hen . . . officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do"); *see also Smith v. City of Wyoming*, 821 F.3d 697, 713 (6th Cir. 2016) (stating that "[k]nocking on the front door of a home in order to speak with the occupant -- a so-called 'knock and talk' -- is generally permissible" under the Fourth Amendment).

However, knock-and-talk encounters -- like that at issue here -- may continue only "for as long as [police] have consent." *Smith*, 821 F.3d at 713. Thus, "[w]hen that consent ends, so does police authority to continue the interaction." *Id.*; *see also King*, 563 U.S. at 470 (stating that, "even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time"). Here, viewing the facts in a light most favorable to Plaintiffs, after initially voluntarily opening his door when police knocked, Inskeep quickly thereafter refused consent to enter or search and ended the consensual "knock-and-talk" encounter by attempting to close his door. Doc. 27-2 at PageID 219. According to Inskeep -- whose version of the facts we generally accept for purposes of summary judgment -- officers "barged into the apartment immediately upon [his] consent search refusal and

9

attempt to close [his] door." Doc. 27-1 at PageID 219. "When an officer . . . forces his way into a private home, he exceeds the scope of a consensual 'knock and talk' and thus intrudes on Fourth Amendment rights." *Smith*, 821 F.3d at 713. While Defendants argue and present evidence that Inskeep consented to the entry into (albeit not a search of) the apartment, issues of fact remain regarding Inskeep's alleged consent. Accordingly, viewing the facts in a light most favorable to Plaintiffs for purposes of summary judgment, absent exigent circumstances, the officers' entry into the apartment violated the Fourth Amendment. *Id.*

Defendants suggest that, even absent Inskeep's consent to enter the apartment, exigent circumstances justified their warrantless entry. Doc. 21 at PageID 116 n.10. "The Supreme Court has recognized four situations satisfying the exigent circumstances exception[,]" namely: (1) "hot pursuit of a fleeing felon"; (2) "imminent destruction of evidence"; (3) "need to prevent a suspect's escape"; and (4) "risk of danger to police or others[.]" *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994) (citing *United States v. Santana*, 427 U.S. 38, 42-43 (1976); *Schmerber v. California*, 384 U.S. 757, 770-71 (1966); *Minnesota v. Olson*, 495 U.S. 91, 100 (1990)). "The government bears a 'heavy burden' to demonstrate" the existence of exigent circumstances. *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). Absent consent or "exigent circumstances, th[e] threshold [of one's home] may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980); *see also Welsh v. Wisconsin*, 466 U.S. 740, 741 (1984); *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971) (stating that "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances'").

Defendants contend that exigent circumstances existed "to prevent the destruction of evidence so long as the police did not create the exigency." Doc. 21 at PageID 116, n.10. Defendants Cooper and Reese, in their affidavits, contend that their warrantless entry was justified based upon their "concern[] that evidence related to the marijuana grow operation would be

destroyed" because of Plaintiffs' mere presence in the apartment. Doc. 21-1 at PageID 134; doc. 21-3 at PageID 154.

Again, Defendants bear the heavy burden of proving the existence of exigent circumstances. *Modrell v. Hayden*, 436 F. App'x 568, 573 (6th Cir. 2011). Defendants can meet their burden by demonstrating an objectively reasonable belief[7] that the destruction of evidence was imminent. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1512 (6th Cir. 1988). Such belief can be shown by evidence that the officers knew "third parties [were] inside the dwelling" and that those persons "may soon become aware the police are on their trail, so that the destruction of evidence would be in order." *Id*. More specifically, police must possess a "good reason to fear that, unless restrained, [persons within the residence] would destroy [evidence] before they could return with a warrant." *Illinois v. McArthur*, 531 U.S. 326, 332 (2001). Defendants' burden, however, requires more than "[t]he mere possibility of loss or destruction of evidence" and, instead, demands "[a]ffirmative proof of the likelihood of the destruction of evidence, along with the necessity for warrantless entry[.]" *United States v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990); *see also Hall v. Shipley*, 932 F.2d 1147, 1153 (6th Cir. 1991) (finding officers had affirmative proof of the likelihood of evidence destruction and, thus, more than a mere "hunch," where "officers were advised by one of their two [reliable] confidential informants that, based on his familiarity with [plaintiff], the informant believed [plaintiff] would not voluntarily open the door until the dope was gone").

From the undersigned's perspective, the conclusory statements of Defendants Cooper and Reese -- and the perfunctory argument set forth in Defendants' motion[8] -- present no more than

---

[7] "The officer's subjective motivation is irrelevant." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006).

[8] "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997); *Southward v. FedEx Freight, Inc.*, 98 F. Supp. 3d 926, 932 (S.D. Ohio 2014).

the mere possibility of evidence destruction. Such conclusory argument and statements fail to satisfy the "affirmative proof" requirement needed to meet the heavy burden of demonstrating exigent circumstances. In addition, it is difficult for the undersigned to find that officers possessed an objectively reasonable belief that Plaintiffs would imminently destroy evidence where those officers testify they held the subjective belief that Plaintiffs consented to their entry. In other words, an issue of fact remains as to whether Defendants could objectively believe that evidence destruction was imminent where those officers themselves believed that Inskeep was allowing them to enter the apartment. Accordingly, issues of fact remain as to whether Defendants violated Plaintiffs' rights under the Fourth Amendment by entering Plaintiffs' apartment without a warrant.

### 2. Detention

After entering the apartment without a warrant, it is undisputed that both Plaintiffs were detained, removed from the apartment, and subsequently transported to the Urbana Police Department. *See* Doc. 21-3 at PageID 154, 156. Defendants concede that Plaintiffs were "seized" for purposes of Fourth Amendment protection. Doc. 21 at PageID 117 (stating that "Defendants do not dispute . . . that the nature and characteristics of Plaintiffs' March 31, 2015 detention were similar to a formal arrest"). Certainly, "[a] seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 629-30 (2003) (further stating that a detention for investigatory purposes and the "involuntary transport to a police station for questioning is" akin to an arrest). *Id*. at 630.

Pursuant to clearly established law, the seizure of a person inside a home without a warrant is presumptively unreasonable. *Payton*, 445 U.S. at 586-90; *see United States v. Reeves*, 524 F.3d 1161, 1166 (10th Cir. 2008) (holding that "*Payton's* protections apply to all Fourth Amendment

12

seizures of persons inside their homes[,]" whether the seizure is an arrest or an investigatory stop); *Manzanares v. Higdon*, 575 F.3d 1135, 1144 (10th Cir. 2009) ("[L]abeling an encounter in the home as either an investigatory stop or an arrest is meaningless because *Payton's* requirements apply to all [such] seizures"). Even where probable cause exists, the "threshold" of one's home "may not be reasonably crossed without a warrant" for the purpose of effectuating the seizure of a person in the absence of exigent circumstances. *Payton*, 445 U.S. at 586-90.

As noted above, the undersigned cannot conclude, based upon Plaintiffs' mere presence in the apartment, that exigent circumstances justified a warrantless entry into their apartment. Accordingly, issues of fact remain as to whether the warrantless seizure of Plaintiffs inside their apartment violated the Fourth Amendment.

### 3. Clearly Established Law

Having found issues of fact remaining with regard to the constitutionality of Defendants' entry into the apartment and the seizure of Plaintiffs therein, the next step in the qualified immunity analysis concerns whether the rights allegedly violated by Reese, Cooper, and Kizer was "clearly established" at the time. *See supra*. A right is "clearly established" when "existing precedent . . . placed the statutory or constitutional question beyond debate." *City & Cty. of San Francisco, Calif. v. Sheehan*, -- U.S. --, 135 S. Ct. 1765, 1774 (2015) (citing *al-Kidd*, 563 U.S. at 741). The Supreme Court has instructed courts to "not define clearly established law at a high level of generality[,]" such as "that an unreasonable search or seizure violates the Fourth Amendment[.]" *al-Kidd*, 563 U.S. at 742. Instead, "[t]he dispositive question is 'whether the violative nature of particular conduct is clearly established'"; an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, -- U.S. --, 136 S. Ct. 305, 308 (2015) (citations and internal quotations omitted).

However, in finding a right "clearly established," the Court need not rely upon "a case on point," *id.*, or even "a prior case [that is] 'fundamentally' or 'materially' similar to the present case[.]" *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1381 (2016); *see also Hopper v. Plummer*, --- F.3d ---, No. 17-3175, 2018 WL 1750673, at *7 (6th Cir. Apr. 12, 2018) (stating that "a case need not 'be on all fours in order to form the basis for the clearly established right'"). Instead, such a right need only be defined "in a particularized context," such as finding a Fourth Amendment violation when state actors use "excessively forceful or unduly tight handcuffing." *Baynes*, 799 F.3d at 614. Such a "level of particularity in defining the constitutional right easily meets the standards set out by the Supreme Court[.]" *Id.*

As noted by the Supreme Court, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Such "is true of their conclusions regarding exigent circumstances." *Id.* In this case, however, the Fourth Amendment rights at issue were clearly established as of March 31, 2015. As noted above, even where an officer has probable cause, the "threshold" of a person's home "may not be reasonably crossed without a warrant" in the absence of exigent circumstances. *Payton*, 445 U.S. at 586-90. It is also clearly established that the mere presence of persons within a residence, in and of itself, is insufficient to establish exigent circumstances. *See Modrell v. Hayden*, 436 F. App'x 568, 580-81 (6th Cir. 2011). Accordingly, Defendants' motion for summary judgment concerning Plaintiffs' Fourth Amendment claims (unreasonable entry and detention) should be **DENIED**.

### B. Audio Recording

Inskeep also alleges that Defendant Burkhammer violated his constitutional rights by altering an audio recording. *See* doc. 2 at PageID 20-21 (in Case No. 3:16-cv-225). Even assuming his challenge to the audio recording is not *res judicata* as a result of his conviction in the state criminal case, Inskeep presents no evidence beyond speculation that the audio recording at issue was altered in any way. *See* doc. 27 at PageID 206. On the other hand, Defendants point to Sergeant Burkhammer's testimony that he did not change, edit, alter or otherwise tamper with the subject audio recording. Doc. 21-4 at PageID 181. Inskeep has not rebutted such Rule 56 evidence. Accordingly, the undersigned finds that Inskeep has failed to meet his burden under Rule 56 and, therefore, Defendants' motion should be **GRANTED** with regard to such claim. *See* Fed. R. Civ. P. 56(c)(1), (e)(2).

### C. Civil Conspiracy

Shafer alleges that Defendants Reese, Cooper and Kizer conspired to violate her Fourth Amendment rights in violation of 42 U.S.C. § 1985(3). Doc. 4 (Case No. 3:16-cv-71) at PageID 33. Claims under § 1985(3) require that "[t]he acts which are alleged to have deprived the plaintiff of equal protection must be the result of class-based discrimination." *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (citation omitted). Assuming, *arguendo*, that Inskeep as well complains under §1985(3), neither Plaintiff alleges class-based discrimination and, therefore, the Court liberally construes such claims as causes of action brought instead pursuant to 42 U.S.C. § 1983.

As stated by the Sixth Circuit:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). "[P]leading requirements governing civil conspiracies are relatively strict" and, therefore, such "claims must be pled with some degree of specificity[.]" *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state . . . a [civil conspiracy] claim under § 1983." *Id.* Here, neither Plaintiff presents evidence nor argument in support of their conspiracy claims on summary judgment. Accordingly, summary judgment is proper with regard to allegations of conspiracy and, thus, Defendants' motion should be **GRANTED** in this regard.

  **D. Municipal Liability**

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. Local governments -- such as municipalities, counties or townships -- are considered persons under § 1983, and "may be sued for constitutional deprivations." *Monell*, 436 U.S. at 690-91. However, such entities cannot be held liable for the acts of its officials on a *respondeat superior* theory. *Id.* at 693. Instead, an official policy or custom must be the "moving force" behind the alleged constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To demonstrate *Monell* liability, one must: (1) identify the policy or custom; (2) connect the policy to the governmental entity; and (3) show a particular injury of a constitutional magnitude incurred because of that policy's execution. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (internal citations omitted).

In this case, one theory upon which Plaintiffs seek to impose municipal liability is the contention that Urbana has failed to properly train its officers regarding the Fourth Amendment. A governmental entity's "failure to [adequately] train and supervise" employees "about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for

purposes of § 1983[.]'" *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 737 (6th Cir. 2015) (citations omitted); *see also Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (stating that "courts recognize a systematic failure to train police officers adequately as custom or policy which can lead to city liability" under § 1983). To prevail on these claims against a government entity under §1983, Plaintiffs must show training and supervision provided: (1) "is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [County's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016); *see also Shadrick*, 805 F.3d at 737 (stating that a plaintiff's "burden under § 1983 is to prove that [the entity's] failure to train and supervise its [employees] . . . amounted 'to deliberate indifference to the rights of persons with whom the [employees] come into contact"); *Glowka v. Bemis*, No. 3:12-CV-345, 2015 WL 8647702, at *5 (S.D. Ohio Dec. 14, 2015).

In this case, Plaintiffs have presented no evidence beyond conclusory allegations to support their *Monell* claims. *See, e.g.*, *Underwood v. Wasko*, No. 2:11-CV-171, 2012 WL 4087411, at *11 (S.D. Ohio Sept. 17, 2012); *Wilhelm v. Knox Cty., Ohio*, No. 2:03-CV-786, 2005 WL 1126817, at *8 (S.D. Ohio May 12, 2005); *Hines v. Chandra*, No. 1:06 CV 2233, 2009 WL 10679789, at *13 (N.D. Ohio Feb. 23, 2009). Accordingly, summary judgment on Plaintiffs' *Monell* claims is proper, *see* Fed. R. Civ. P. 56(c) and (e)(3), and Defendants' motion for summary judgment should be **GRANTED** in this regard.

## IV.

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment: (1) be **DENIED** with regard to Plaintiffs' 42 U.S.C. § 1983 claims alleging violations of the Fourth Amendment; and (2) be **GRANTED** with regard to all other claims asserted by Plaintiffs.

Date:  May 23, 2018               s/ Michael J. Newman              
                                  Michael J. Newman
                                  United States Magistrate Judge

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).